```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re:                              :

EDWARD J. BURBANK and
DONNA M. BURBANK                    :   BK No. 08-11620
          Debtor                            Chapter 13

- - - - - - - - - - - - - - - - -x
```

## OPINION AND ORDER OVERRULING TRUSTEE'S OBJECTION TO PLAN CONFIRMATION

APPEARANCES:

    Peter M. Iascone, Esq.
    Attorney for Debtors
    Peter M. Iascone & Associates, Ltd.
    117 Bellevue Avenue
    Newport, Rhode Island 02840

    John Boyajian, Esq.
    Chapter 13 Trustee
    BOYAJIAN HARRINGTON & RICHARDSON
    182 Waterman Street
    Providence, Rhode Island 02906

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 08-11620

The Trustee objects to confirmation of the Debtors' Plan, on the grounds that: (1) the payments proposed under the Plan do not meet the requirements of the means test, and (2) the Plan does not provide that all of the Debtors' projected disposable income will be applied to plan payments.[1]  Specifically, the Trustee objects to the deduction of "ownership expenses" for two vehicles on which the Debtors owe no secured debt or lease payments, and the deduction for mortgage payments on two parcels of real estate which the Debtors intend to surrender.  At issue is the correct application, in Chapter 13 cases, of Sections 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii) of the Bankruptcy Code.[2] For the reasons discussed below, the Trustee's Objection to confirmation, as to both issues, is **OVERRULED**, and the claimed means test deductions are **ALLOWED.**

## BACKGROUND

The Debtors filed this Chapter 13 case on May 30, 2008. Their Official Form 22C - the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "means test") shows monthly income of

---

[1] The Trustee also objected on the ground that the Plan unfairly discriminates against unsecured creditors, but this issue was waived at the confirmation hearing.

[2] 11 U.S.C. 101 *et. seq.*

1

BK No. 08-11620

$11,273.84 (or $135,286 annually) which in Rhode Island is above the applicable median income limit for a family of three. The Debtors claim $978 per month of ownership expense for two automobiles that they own free and clear of any loans or lease payments. Their means test calculation also includes deductions for mortgage payments in the amount of $1,973 and $642 on two properties that the Debtors intend to surrender. Again, neither the Plan nor Schedule J provides for any payments regarding these secured claims. The Trustee objects to said deductions on the ground that the Debtors are not proposing to dedicate all of their projected disposable income to payments under the plan as required by Section 1325(b)(1) of the Bankruptcy Code. The Trustee argues that (1) the Debtors should not be allowed to deduct vehicle ownership expense where there will be no monthly car loan or lease payments, and (2) the Debtors should not be allowed to deduct mortgage payments on real property they intend to surrender.

## **DISCUSSION**

**I. Plan confirmation and the means test.**

Section 1325(a) contains the requirements for confirmation in Chapter 13, and Section 1325(b)(1)(B) provides in relevant part that: "[i]f the trustee ... objects to the confirmation of

2

the plan, then the court may not approve the plan, unless ... the plan provides that all of the debtor's projected disposable income ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. 1325(b)(1)(B).

Although the Bankruptcy Code does not explain the term "projected disposable income," "*disposable income*" is defined in Section 1325(b)(2), as: "current monthly income received by the debtor ... less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." In turn, Section 1325(b)(3) directs that, for a family with an above-median income, the amounts "reasonably necessary to be expended" shall be determined in accordance with Section 707(b)(2)(A) and (B). Section 707(b)(2)(A) codifies the so-called "means test" and allows debtors to deduct from current monthly income their: (a) monthly expenses (exclusive of any payment of debts), and (b) expenses for monthly payments on account of secured debts. *See* Sections 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii) respectively.

Section 707(b)(2) was added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA"), and as one court bluntly put it, "[t]he enactment of BAPCPA threw a

3

BK No. 08-11620

large monkey wrench into the well established and well understood process of determining projected disposable income." *In re Thomas*, 395 B.R. 914, 921 (B.A.P. 6th Cir. 2008). Prior to BAPCPA, disposable income was determined by subtracting the debtor's expenses listed on Schedule J from the income listed on Schedule I, and multiplying that figure by the number of months in the plan. *In re Frederickson*, 545 F.3d 652, 658 (8th Cir. 2008). Under the former process, courts were able to make adjustments where the amounts claimed were unsubstantiated, or were determined to be unreasonable, unnecessary or excessive. *In re Degrosseilliers*, No. 08-10942-SSM, 2008 WL 2725808 at *2 (Bankr. E.D. Va. July 11, 2008). Such adjustments were, of course, subjective, with some courts allowing expenses that other courts would disallow. *Id*. Congress, however, was clearly determined to eliminate *a perceived* (but unwarranted and unsubstantiated) judicial abuse of the system, by curtailing the subjectivity and discretion of bankruptcy courts when calculating "disposable income," *Frederickson*, 545 F.3d at 658, and it did so by mandating a rigid definition of the term "disposable income," in Section 1325(b)(2). *Id*. For debtors with below median income, the process remains the same as it was pre-BAPCPA. *Id*. The new "BAPCPA" approach is a departure from the prior treatment of

4

BK No. 08-11620

"disposable income," in that it requires the application of a rigid formula, instead of a determination based on the facts and circumstances of each case. *In re Kagenveama*, 541 F.3d 868, 874. (9th Cir. 2008).

Congress designed the means test to serve two purposes. First, to determine whether the grant of a Chapter 7 discharge would be an abuse of Chapter 7, i.e., if the Debtor's income is greater than certain levels set by Congress, the case will either be dismissed or, with the consent of the debtor, converted to a case under Chapter 13. In Chapter 13, the debtor is obligated to devote all of his or her projected disposable income to payment of unsecured claims. Second, Chapter 13 incorporates the means test by reference in order to determine what "disposable income" is, and Official Form 22C implements the means test for Chapter 13 debtors. Fed. R. Bankr. P. 1007(b)(6). With that as background, we will address the two issues raised in this case.

**II. May Debtors deduct car *ownership expenses*, on their means test, where there is no secured debt on the motor vehicle?**

Section 707(b)(2)(A)(ii)(I) states in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the

5

BK No. 08-11620

> Internal Revenue Service for the area in which the debtor resides... Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. 707(b)(2)(A)(ii)(I). The National and Local Standards referred to in the statute are derived from the IRS Financial Analysis Handbook, which is a part of the IRS Internal Revenue Manual. Car ownership costs for specific census regions are in "IRS Local Transportation Expense Standards." For the Northeast Census Region, those are listed as $489.00 for the first car and $489.00 for the second car.[3]

As mentioned above, Section 707(b)(2)(A)(ii)(I) was added to the Bankruptcy Code by BAPCPA in 2005 and, as with many other provisions of this Act, it has generated much litigation and disagreement among bankruptcy and appellate courts throughout the country. As Judge Haines said recently: "[t]o say there is a split of authority on this point would be an understatement." *In re Coffin*, 396 B.R. 804, 807 (Bankr. D. Me. 2008). *See also, In re Young*, 392 B.R. 6 (Bankr. D. Mass. 2008) (discussing the division of authority, the various rationales advanced by courts, and concluding that no clear majority view has emerged). Of the four bankruptcy appellate panels that have considered this issue,

---

[3] This information is available on the U.S. Trustee website, www.usdoj.gov/ust.

6

BK No. 08-11620

two have permitted the deduction, *see In re Pearson*, 390 B.R. 706 (B.A.P. 10th Cir. 2008), *vacated as moot*, 2009 WL 205408 (10th Cir. Jan. 22, 2009), and *In re Kimbro*, 389 B.R. 518 (B.A.P. 6th Cir. 2008), and two have disallowed it, *see In re Wilson*, 383 B.R. 729 (B.A.P. 8th Cir. 2008) and *In re Ransom*, 380 B.R. 799 (B.A.P. 9th Cir. 2007). There is disagreement among the bankruptcy courts in the First Circuit, with the majority, to date, ruling in favor of allowing the ownership deduction where the debtor has no loan or lease payments on the automobile. See *In re Lane*, 394 B.R. 248 (Bankr. D. Mass. 2008), *In re Young*, 392 B.R. 6 (Bankr. D. Mass. 2008), and *In re Mati*, 390 B.R. 11 (Bankr. D. Mass. 2008), while the Maine Bankruptcy Court reached the opposite conclusion in *Coffin*. The only circuit court that has addressed this issue ruled that the debtor could deduct ownership expenses for a vehicle he owned outright. *See In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008).

The Trustee urges this Court to adopt the position that a particular expense amount must first be *applicable* to the debtor before it may be deducted on the means test, arguing, in effect, that "applicable" expense means "actual" expense of the debtor.

Although it is not an easy call, I respectfully disagree with the Trustee, and adopt the reasoning and conclusion of the

7

BK No. 08-11620

Seventh Circuit in *Ross-Tousey*, where the court held that the plain language of the statute clearly differentiates between "applicable" expenses and "actual" expenses, as follows:

> In order to give effect to all words of the statute, the term "applicable monthly expense amounts" cannot mean the same thing as "actual monthly expenses." Under the statute, a debtor's "actual monthly expenses" are only relevant with regard to IRS's "Other Necessary Expenses;" they are not relevant to deductions taken under the Local Standards, including the transportation ownership deduction. Since "applicable" cannot be synonymous with "actual," applicable cannot reference what the debtor's actual expense is for a category.... We conclude that the better interpretation of "applicable" is that it references the selection of the debtor's geographic region and number of cars [in the household].

*Ross-Tousey*, 549 F.3d at 1158.

I also hold that the expenses specified in the Local Standards that are applicable to the debtor are the ones that match the debtor's locality and the number of cars in the household. The Burbanks live in Rhode Island and have two cars. The ownership expense applicable to them is $489 per month per car, which is the amount they may deduct in calculating their means test.

I must also disagree with the Trustee's argument that "ownership expense" can *only* mean either a car installment loan or a lease payment. First, nothing in the statute requires such

8

BK No. 08-11620

a narrow reading. In fact, Section 707(b)(2)(A)(ii)(I) specifically states "... the monthly expenses of the debtor shall not include any payments for debts...", and the IRS Local Transportation Standards do not require a taxpayer to owe a debt or a lease payment in order to deduct ownership expense. *See Kimbro*, 389 B.R. at 522. Secondly, car ownership expenses necessarily and typically include items such as depreciation, licensing, taxes, and insurance. *Ross-Tousey*, 549 F.3d at 1160. It should also be noted that, for means test purposes, ownership expense does not include operating costs, such as maintenance and repairs. Those costs are deducted as a separate line item on the means test.

Finally, we agree with *Ross-Tousey* in saying that allowing a debtor who owns the vehicle, free and clear of secured debt, to deduct the ownership expense avoids arbitrary and unfair results. *Id*. at 1161. Otherwise, the debtor who pays off his/her car loan just before bankruptcy would not be able to take the deduction, while the debtor who has only one or two car payments remaining, as of the filing date, would be eligible to continue taking the deduction even after the contract is paid off. *Id.*

For all of the foregoing reasons, I conclude that the Debtors may deduct their applicable car ownership expense in

9

BK No. 08-11620

conducting their means test, notwithstanding that they do not owe a regular installment or lease payment.

**III. May Debtors deduct, on their means test, payments for secured debt for real property they intend to surrender?**

This is "yet another legal conundrum produced by Congress' injecting into the chapter 13 'projected disposable income' test certain aspects of the chapter 7 means test for determining abuse." *In re Hoss*, 392 B.R. 463, 466 (Bankr. D. Kan. 2008). And again, for a family with an above-median income, Section 1325(b)(3) commands the application of Section 707(b)(2)(A) and (B) to determine the meaning of the amounts "reasonably necessary to be expended." *In re Quigley*, 391 B.R. 294, 299 (Bankr. N.D. W.Va. 2008). The secured debt payment deduction is defined in Section 707(b)(2)(A)(iii):

> [t]he debtor's average monthly payment on account of secured debt shall be calculated as the sum of (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and (II) any additional payments to secured creditors necessary for the debtor ... to maintain possession of ... property ... that serves as collateral for secured debt.

11 U.S.C. 707(b)(2)(A)(iii). Most courts addressing the issue in Chapter 7 cases have allowed the deduction for mortgage payments where the debtor intends to surrender the property. *See In re*

10

*Thomas*, 395 B.R. 914, 920 (B.A.P. 6th Cir. 2008). See also the First Circuit Bankruptcy Appellate Panel ruling that in Chapter 7 cases, the purpose of the calculation is to determine whether there is presumption of abuse warranting dismissal of the case, and that the application of this section involves a snapshot of the debtor's financial condition *as of the date of the petition*. *In re Rudler*, 388 B.R. 433, 438-439 (B.A.P. 1st Cir. 2008). While, in *Rudler*, the Chapter 7 debtor was allowed to deduct the mortgage payment on property which he intended to surrender, the Panel did acknowledge generally that "[t]he application of the means test in Chapter 7 and Chapter 13 differs." *Id.* at 438, n.6. Unfortunately, the incorporation of the means test into Chapter 13 is "awkward, at best," *In re Hay*, No. 08-00474-MDF, 2008 WL 5158577 at *2 n.3. (Bankr. M.D. Pa. Nov. 13, 2008), and the issue at hand has generated, to borrow the Trustee's expression, a "plethora of opinions and arguments." *See Hoss*, 392 B.R. at 467-471 (describing the lack of unanimity in the opinions); *Quigley*, 391 B.R. 305-313 (analyzing and rejecting seven reasons advanced by various courts as to why the Chapter 7 application of Section 707(b)(2)(A)(iii)(I) should be different in Chapter 13). Despite this multiplicity of results, theories, and rationales, the divide boils down, effectively, to two approaches we will call

11

BK No. 08-11620

the "realistic" approach and the "mechanistic" approach. Two appeals courts considering the issue, vis-a-vis Chapter 13, have come to opposite results. The realistic approach was taken by the Eighth Circuit in *Frederickson*, concluding that the means test is only a starting point for determining the Chapter 13 debtor's disposable income. 545 F.3d at 659. "[T]he final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J."[4] *Id*. This position has considerable support, as it takes into account the actual income and expenses of the debtor at the time of confirmation.[5]

---

[4] The realistic approach was followed by the Bankruptcy Appellate Panel in this Circuit. See *In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007). *However, Kibbe* differs from the present case in two important respects: (1) the debtor in *Kibbe* was a below-median income debtor, and (2) that court dealt with the income component of the means test, whereas we are concerned with the expense component. The Panel in *Kibbe* specifically acknowledged that it did not address the "expense component of the 'projected disposable income' calculation." *Id*. at 307 n. 6.

[5] *See e.g.*, *In re Thomas*, 395 B.R. 914 (B.A.P. 6th Cir. 2008); *In re Hoss*, 392 B.R. 463 (Bankr. D. Kan. 2008); *In re Koch*, 391 B.R. 230 (Bankr. N.D.N.Y. 2008); *In re Suess*, 387 B.R. 243 (Bankr. W.D. Mo. 2008); *In re Long*, 390 B.R. 581 (Bankr. E.D. Tex. 2008); *In re Van Bodegom Smith*, 383 B.R. 441 (Bankr. E.D. Wis. 2008); *In re Coleman*, 382 B.R. 759 (Bankr. W.D. Ark. 2008); *In re Spurgeon*, 378 B.R. 197 (Bankr. E.D. Tenn. 2007); *In re Sackett*, 374 B.R. 70 (Bankr. W.D.N.Y. 2007); *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006); *In re Crittendon*, No. 06-10322, 2006 WL 2547102 (Bankr.

BK No. 08-11620

Despite its broad appeal and following, however, there is also a fair amount of opposition to the *Frederickson* (realistic) approach. The Ninth Circuit has held that "projected disposable income" is not a forward-looking concept, *In re Kagenveama*, 541 F.3d 868, 871-872 (9th Cir. 2008). It stated that the term "projected" modifies "disposable income" and is not synonymous with the word "anticipated" in this context. *Id.* at 874. "Projected disposable income" means "disposable income," as defined by Section 1325(b)(2), projected over the "applicable commitment period." *Id.* at 872. In turn, for debtors with above median income, the "amounts reasonably necessary to be expended" are determined in accordance with Section 707(b)(2). *Id.* at 872 n.1. Thus, "BAPCPA replaced the old definition of what was 'reasonably necessary' with a formulaic approach for above-median debtors." *Id.* at 873 n.2.

*Kagenveama* also rejected the notion that the calculation of disposable income under Section 1325(b)(2) is merely a starting point for deriving "projected disposable income," that may be rebutted or supplemented by other evidence. The court stated:

> This line of authority is unpersuasive because no text in the Bankruptcy Code creates a presumptively

---

M.D.N.C. Sep. 1, 2006); *In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006); *In re McPherson*, 350 B.R. 38 (Bank. W.D. Va. 2006).

BK No. 08-11620

> correct definition of "disposable income" subject to modification based on anticipated changes in income and expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised "disposable income" test uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. Sec. 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which is bound up with the facts and circumstances of the debtor's financial affairs. (internal citations omitted).

*Id*. at 874. Consistent with this conclusion, many courts have held that secured debt means test expenses in Chapter 7 are not different from secured debt expenses deducted from the disposable income test in Chapter 13. *See e.g. Quigley*, 391 B.R. at 313.[6] Consequently, these courts have allowed the deduction of secured payments for purposes of calculation of a debtor's "projected disposable income" where the debtor intended to surrender the collateral.

Naturally, the result under *Kagenveama* is unfavorable to unsecured creditors. But, "when the statutory language is plain,

---

[6] *See also*, *In re Smith*, No. 07-43853, 2008 WL 4964720 (Bankr. W.D. Wa. Nov. 14, 2008); *In re Hay*, No. 08-00474-MDF, 2008 WL 5158577 (Bankr. M.D. Pa. Nov. 13, 2008); *In re Willette*, 395 B.R. 308 (Bankr. D.Vt. 2008); *In re Degrosseilliers*, No. 08-10942-SSM, 2008 WL 2725808 (Bankr. E.D. Va. July 11, 2008); *In re Hoskings*, No. 07-13785-RGM, 2008 WL 2235350 (Bankr. E.D. Va. May 29, 2008); *In re Turner*, 384 B.R. 537 (Bankr. S.D. Ind. 2008); *In re Allen*, No. 07-41327, 2008 WL 451053 (Bankr. D. Kan. Feb. 15, 2008); *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007); *In re Ries*, 377 B.R. 777 (Bankr. D.N.H. 2007); *In re Austin*, 372 B.R. 668 (Bankr. D.Vt. 2007).

BK No. 08-11620

the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). As the Ninth Circuit noted: "[w]hile the new law may produce less favorable results for unsecured creditors when applied to above-median income Chapter 13 debtors, it is far from absurd to hold that debtors with no "disposable income" have no "projected disposable income." *Kagenveama*, 541 F.3d at 875.  Moreover, the legislative debate shows that Congress made a deliberate decision to use an inflexible, objective formula, rather than to leave any judicial discretion in determining the debtor's ability to pay. See *In re Turner*, 384 B.R. 537, 542-544 (Bankr. S.D. Ind. 2008). "If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute." *Kagenveama*, 541 F.3d at 875.

Although neither *Frederickson* nor *Kagenveama* present clear, easy to follow solutions, I will adopt the Ninth Circuit view, and rule that the Debtor is entitled to deduct in its means test calculation, payments on account of secured debt on property which he plans to surrender.

In his objection, the Trustee states that in the event we reach the result announced herein, he may move for plan

BK No. 08-11620

modification under Section 1329(a) to reflect the actual financial situation of the Debtors. We will cross that bridge when we reach it. The issue is not before us today.

Accordingly, the Trustee's objection to confirmation is **OVERRULED**, and the Chapter 13 Trustee is **ORDERED** to submit a Confirmation Order consistent with the conclusions reached herein.

Finally, the Court acknowledges the well presented argument of the Chapter 13 Trustee, as well as the United States Trustee in her amicus brief. Such assistance is most helpful and is appreciated by this Court when difficult issues like this arise.

Dated at Providence, Rhode Island, this 24th day of February, 2009.

                                            Arthur N. Votolato
                                            U.S. Bankruptcy Judge

Entered on docket: 2/24/09